BARBARA DAVIS *vs.* DANIEL S. RICH.

Suffolk.    November 14, 1901. — January 2, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Nuisance.*

If one in control of a building maintains thereon a spout having a visible defect which causes water to run upon the sidewalk instead of into the sewer after he knows or has had a reasonable time to know that the defect exists, he is absolutely liable to any person injured from falling by reason of a ridge of ice thus formed.

TORT for injuries from the plaintiff falling by reason of a ridge of ice on the sidewalk adjoining a building owned and controlled by the defendant caused by water coming from a spout attached to the building.    Writ dated January 17, 1900.

At the trial in the Superior Court, before *Stevens*, J., the jury returned a verdict for the plaintiff in the sum of $800; and the defendant alleged exceptions.

The defendant's request for a ruling numbered 13, which is mentioned near the end of the opinion but not stated, was as follows: " Even if there was a hole or leak in the pipe or conductor in question from which water escaped and formed an accumulation of ice upon the sidewalk, still the defendant is not liable if he used ordinary and reasonable care in providing a proper and suitable pipe in the first instance and afterwards exercised ordinary and reasonable care to keep it in suitable repair."

*G. F. Ordway*, for the defendant.

*A. D. Moran*, for the plaintiff.

HOLMES, C. J.    This is an action for personal injuries caused by slipping upon a ridge of ice on a sidewalk and falling.    There was evidence that the alleged ridge of ice was formed by the freezing of water from a pipe leading from a gutter to a sewer, that the water escaped through a hole in the pipe, or overflowed from the gutter and ran down the pipe on the outside, or in some way was discharged by the pipe upon the sidewalk.    The pipe was in the defendant's control.    The plaintiff had a verdict, and

the case is here on the defendant's exceptions to rulings and refusals to rule.

The plaintiff requested the following instructions: 2. It is the duty of the defendant to so construct and maintain his conductors and spouts as to prevent the water coming therefrom from flowing upon the sidewalk. 4. It is the duty of the defendant to so construct, manage and care for his premises as to prevent water which accumulates thereon from becoming, in the natural course of events, a source of danger to travellers lawfully using the highway. 11. If the spout was so maintained on January 31, 1898, as to cause the water to flow upon the sidewalk instead of into the sewer then the defendant is liable without further proof of negligence, if the plaintiff was in the exercise of due care. It is stated that the court gave these instructions, adding as to the eleventh that he gave it with the qualification he had already given. And although the qualification referred to was attached specifically only to the eleventh, it is manifest on reading the portions of the charge which are printed that the other rulings also were not left *in vacuo* as naked, abstract propositions, but were given subject to other requirements repeatedly stated by the judge. Even taking the instructions by themselves, it is not clear that they mean anything more than a statement of the defendant's duty when he knows the conditions. The words " in the natural course of events " in number 4, and " maintained " in number 11, point to that interpretation and do not suggest a requirement that the defendant should know at once and at his peril any leak that the spout might spring. Indeed the eleventh request may perhaps be taken to refer to maintaining the pipe so as to discharge from its mouth upon the sidewalk, by deliberate arrangement, as one witness said that it had done. When the defendant does know the conditions, he is bound at his peril to prevent the result. See *Lion* v. *Baltimore City Passenger Railway*, 90 Md. 266, 274. But the course of the charge should be considered before deciding whether the defendant suffered any wrong. We therefore turn to that.

After explaining the requirement of due care on the plaintiff's part, the judge stated as the next thing to be proved in order to charge the defendant, that there was a nuisance on the side-

walk, and that that nuisance was due to the neglect of the defendant to do what he reasonably could have done to prevent it. Then in more specific form he stated that if the jury found that the ice was a nuisance the question was whether it was produced by water coming from the spout, and then that it must have been a nuisance produced by some defect in the spout or in the gutter near the head of the spout such that water " would not naturally be carried off."

The meaning of this is perfectly plain. It was left to the jury to find whether there was a nuisance, and if so whether it was due to a defect, and if so whether the defect was of such a nature that it naturally would produce the nuisance supposed. The word " naturally " imported that the result must be one which manifestly would come to pass according to common experience if the defect was allowed to remain. A defect in an outside gutter or spout which naturally would produce a nuisance necessarily would be of a certain magnitude and would be visible on inspection.

The judge then went on to say that the defendant was bound to construct the spout in the first place and to maintain it afterwards in such a manner as to carry off the water so as not to conduct it upon the sidewalk and to create a nuisance. These words, like the requests, probably referred to the defendant's liability in cases where his knowledge of the actual condition of the pipe or his duty to know it would be indisputable. The original plan of construction he would be assumed to know if he constructed the pipe, and the word " maintain " conveys the notion of such continuance of conditions and mode of working as all would agree that the defendant would be bound to know. There is no doubt that when a man knows that his spout will create a nuisance he is answerable for it. *Lion* v. *Baltimore City Passenger Railway*, 90 Md. 266. *Ball* v. *Nye*, 99 Mass. 582. See *Holyoke* v. *Hadley Co.* 174 Mass. 424. When knowledge of the damage done or threatened to the public is established, the strict rule of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, is not in question. The general principles of tort establish liability unless some special privilege can be made out. We may as well mention in this connection a special exception to a statement by the judge that the defendant could not maintain the conductor

in such a manner as naturally to carry water on to the sidewalk so as to create a nuisance.   Manifestly this refers to a maintenance with knowledge of the conductor's way of working, and needs no further remark.

Perhaps, however, the instructions held the defendant somewhat more strictly than we have supposed thus far, and meant that he was bound at his peril to find out the defect in his spout within a reasonable time.   No particular attention was called to this precise question, but as in other respects the defendant's liability was confined to what a reasonable man could have anticipated, and as it was based in terms upon a neglect to do what the defendant reasonably could to prevent the injury, the meaning probably was not that the defendant was bound to know of a defect at once.   Moreover there does not seem to have been any suggestion that the defect had come suddenly and lately into being, or any ground for such a suggestion.   If there was a defect, it probably was an old one.   When we are dealing with a permanent, visible defect that according to common experience will create a nuisance in a highway, undoubtedly the law would require the person responsible for it to find it out, at least within a reasonable time.   *Leahan* v. *Cochran*, 178 Mass. 566. *Irvine* v. *Wood*, 51 N. Y. 224, 229.   See *Bourget* v. *Cambridge*, 159 Mass. 388;  *Wilson* v. *New Bedford*, 108 Mass. 261.   The charge of the judge, as we have summed it up, was no stricter than the law as we have stated it, and meant no more.   When at the end he read the instructions which we have quoted and said that he had given them substantially, the eleventh with the qualification referred to, obviously no new or contradictory principles were introduced.

The defendant asked for a ruling that the defendant was " not liable unless he failed to exercise that degree of care in originally building and subsequently maintaining the gutter and conductor which every person of common prudence and caution ordinarily takes of his own concerns."   As to this it is enough to say that if the defendant knew that his gutter or spout created a nuisance, he was absolutely answerable for the harm it did until he stopped it.   The request is not discriminating enough to raise a nice question as to precisely how soon the defendant was bound to know of the defect, — whether only within a rea-

sonable time or at once.  All that the defendant was entitled to was embraced in the instructions given.  The same may be said about the request numbered 13, and also that if there was a hole or leak there was nothing to indicate that it was recent, or that the defendant had shown due care.  That was not the defendant's case.  His case was that there were no such holes or leaks.

The only other exception was to a refusal to rule that the defendant was not liable unless the jury found that there was a hole in the spout at the time of the accident, from which water escaped and formed· an accumulation of ice on the sidewalk. This instruction was given in substance, except that instead of a hole in the spout the jury were allowed to find a defect in the spout or in the gutter near the head of the spout.  The larger latitude allowed was right.  The plaintiff, it is true, testified to a hole in the spout.  But another witness gave evidence which indicated an overflow from the gutter on the outside of the spout, and yet another testified that the spout discharged upon the sidewalk.  The defendant's evidence of course must be disregarded as the jury might have disbelieved it.

*Exceptions overruled.*