C. HARRY HIRSCH et al., Copartners Doing Business as ARTISTIC WAIST COMPANY, Respondents, v. MAX RADT, Appellant.

**Landlord and tenant — negligence — liability of landlord for damages to property of tenant caused by leaky roof — there is no liability unless dangerous condition is known or, with the exercise of due care, should have been known to the landlord.**

1. Liability does not attach to a landlord for injuries sustained by a tenant by reason of defects in the demised premises unless the dangerous condition is known, or with the exercise of due care, ought to have been known to him. If negligence be shown, the action may take the form of one for nuisance or for negligence, but whatever the form of pleading, the basis of liability is the same.

2. Plaintiffs leased from the defendant for a stated rent the sixth loft of a seven-story building. The lease provided that the lessor should not be liable to the lessees for any damages caused by the leakage of the roof, vaults, lights or skylights, unless the lessor neglected to repair the same within a reasonable time after written notice thereof. During a heavy storm the water falling upon the roof of the building was not carried off by the leader, but overflowed the sills around the skylights, was thrown into the top loft and from there leaked through into the loft occupied by the plaintiffs, injuring their property. No written notice was given of any leak or defect. This action was brought to recover the damages sustained, on the ground that defendant was liable therefor. At the conclusion of the trial the court sent the case to the jury to determine whether there was a defect in the construction and maintenance of the roof and skylights which constituted a nuisance and if so, the amount of damage sustained. *Held,* that the

instructions given were erroneous and there is no evidence to sustain the verdict based upon the theory that the maintenance of the roof and skylights was a nuisance.

*Hirsch* v. *Radt,* 179 App. Div. 891, reversed.

(Argued January 22, 1920; decided February 24, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 6, 1917, affirming a judgment in favor of plaintiffs entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Jacob M. Schoenfeld* for appellant. Assuming the roof to have been of such radically defective construction as not to keep out the rain, it did not constitute as between the plaintiffs lessees and the defendant lessor a nuisance. (*Boyd* v. *Councilmen,* 117 Ky. 199; *Melker* v. *City of New York,* 190 N. Y. 481; *People* v. *Lee,* 107 Cal. 497; Joyce on Nuisances, 1; *Baines* v. *Hartein,* 54 Me. 124; *Lawton* v. *Steele,* 119 N. Y. 226; *Meeker* v. *Van Rensselaer,* 15 Wend. 397, 399; *People* v. *Met. Tel. Co.,* 11 Abb. N. C. 304, 317; *Campbell* v. *Seaman,* 2 T. & C. 231; 63 N. Y. 568; *Gifford* v. *Hulett,* 62 Vt. 342; *McNulty* v. *Ludwig & Co.,* 153 App. Div. 206; *Bohan* v. *P. J. Gas Light Co.,* 122 N. Y. 18.) The condition precedent to any liability for damage by leakage, under paragraph "third" of the lease was equally applicable to such damage arising from the nuisance if the leakage resulted from a nuisance. (*Dubois* v. *Budlong,* 15 Abb. Pr. 445; *Cooper* v. *Schultz,* 32 How. Pr. 107; *Bullock, etc., Elec. Co.* v. *Coleman,* 136 Ala. 610.) There was no evidence to sustain the jury's findings that the damage was due to radical structural defects in the construction of the roof or skylights. (*Robbins* v. *Mount,* 27 N. Y. Super. Ct. 553.)

*H. T. Mann* and *Alvin T. Sapinsky* for respondents. The facts show overwhelmingly that the condition of the roof and skylight was radically defective and dangerous

constituting a nuisance and the verdict of the jury is amply sustained by the evidence. (*Hawkins* v. *Mapes-Reeve Construction Co.,* 178 N. Y. 236; *McCaffrey* v. *B. & O. R. R. Co.,* 201 N. Y. 115; *O'Brien* v. *Stern Bros.,* 223 N. Y. 290; *Costello* v. *Costello,* 209 N. Y. 252; *Winne* v. *Winne,* 166 N. Y. 263; *Cox* v. *Stokes,* 156 N. Y. 491; *Chainless Cycle Mfg. Co.* v. *Security Ins. Co.,* 169 N. Y. 304; *Ostrom* v. *Greene,* 161 N. Y. 353; *People ex rel. Town of Colesville* v. *D. & H. Co.,* 177 N. Y. 337.)    Inasmuch as the action is based upon nuisance, notice to the landlord of the structural defect in the roof is unnecessary. Even if notice were necessary, however, the proof shows that such notice was given and accepted, and that the landlord promised to make the necessary repairs. (*Finkelstein* v. *Huner,* 77 App. Div. 424; *Dunsbach* v. *Hollster,* 49 Hun, 352; *Delaney* v. *New York Polyclinic Hospital,* 69 Misc. Rep. 625; *Board of Health* v. *Valentine,* 57 Hun, 591; *Ahearn* v. *Steele,* 115 N. Y. 203; *Vaughn* v. *Buffalo Ry. Co.,* 72 Hun, 471; *McGrath* v. *Walker,* 64 Hun, 179; *Irwin* v. *Wood,* 51 N. Y. 224; *Cohocton Stone Road Co.* v. *Buffalo Road,* 51 N. Y. 573; *Swords* v. *Edgar,* 59 N. Y. 28.)

McLAUGHLIN, J.    On July 1, 1912, the parties entered into a written lease, by which the plaintiffs leased from the defendant for a stated rent the sixth loft of a seven-story building in the city of New York for a term of one year, five and a half months from the 15th of August, 1912.    The lease provided, among other things, that the lessor should not be liable to the lessees for any damages caused by the leakage of the roof, vault, lights or skylights, unless the lessor neglected to repair the same within a reasonable time after written notice thereof.    On the 1st of October, 1913, a very heavy rain storm occurred in the city of New York, lasting from 6 A. M. until 6:35 P. M., and commencing again at 8:25 P. M. and continuing through the night.    Some five and a half inches of water fell — 3.31 inches falling in two hours —

which according to the uncontradicted evidence was the greatest amount of precipitation ever recorded by the Weather Bureau. During the storm the water falling upon the roof of the building was not carried off by the leader, but overflowed the sills around the skylights, was thrown into the top loft and from there leaked through into the loft occupied by the plaintiffs, injuring their property. This action was brought to recover the damages sustained, on the ground that defendant was liable therefor.

The complaint contained two causes of action, (1) on the ground that defendant was liable because he had negligently constructed and maintained the roof of the building, and especially the sills around the skylights; and (2) that the skylights upon the roof, by reason of the manner in which they had been constructed, constituted a nuisance. At the conclusion of the trial the court dismissed the cause of action by which a recovery was sought on the ground of negligence and sent the case to the jury to determine whether there were a defect in the construction and maintenance of the roof and skylights which constituted a nuisance and if so, the amount of damage sustained. The plaintiffs had a verdict, on which judgment was entered, which was affirmed by the Appellate Division, two of the justices dissenting, and this appeal followed. Proper exceptions were taken to the submission of the question to the jury, which enables this court to review the question presented, and the affirmance not being unanimous, enables us to look into the record for the purpose of ascertaining whether there is any evidence to support the verdict.

I am of the opinion that the instructions given were erroneous and there is no evidence to sustain the verdict based upon the theory that the maintenance of the roof and skylights was a nuisance. The roof and skylights certainly were not a nuisance in their creation. The plans of the building were prepared by an experienced

architect, approved by the building department of the city, and the building constructed in accordance therewith by an experienced builder. The defendant, therefore, had a legal right to erect the building in any way he saw fit, subject to the approval of the building department, so long as he did not injure his neighbor or persons rightfully using the public streets. When the building was completed he was the owner of an unoccupied structure. If there were leaks in the roof, or the leaders were insufficient in size to carry off the rain water, and by reason of that fact the same overflowed the sills around the skylights, that was a matter of his own concern and no one's else. He could not be guilty of a nuisance as against himself. If the roof and skylights were not a nuisance in their creation, the question then is how and when did they become so. The only intervening act was the letting to the plaintiffs of the sixth loft. Obviously, the plaintiffs could not, by taking a lease thereof, convert what had theretofore been a legal, into an illegal, structure. (*Jaffe* v. *Harteau*, 56 N. Y. 398.) The general rule is that in the absence of fraud one may let a building, or portion of it, out of repair, if the tenant will take it in that condition. (*Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404.) There is an exception to this rule to the effect that where the subject of the lease is part of a building, a duty is imposed upon the lessor to use reasonable care in keeping in suitable condition the hallways, roof and other parts of the building intended for the general use of all tenants and which are subject to the landlord's control. (*Dollard* v. *Roberts*, 130 N. Y. 269.) It has been held, however, that this duty does not extend to defects in existence when the lease was executed. (*O'Malley* v. *Twenty-five Associates*, 178 Mass. 555; *Quinn* v. *Perham*, 151 Mass. 162; *Doupe* v. *Genin*, 45 N. Y. 119; *Simons* v. *Seward*, 54 Sup. Ct. Rep. [22 J. & S.] 406.)

It is unnecessary to determine, in passing upon the

question here presented, whether or not such a limitation would be recognized by the courts in this state at the present time, at least where the defective condition was not visible to the tenant upon the acceptance of the lease. I will, however, assume, without attempting to decide the question, that the landlord would be bound to remedy defects in the parts of the building subject to his reserved control, if ordinary care would have discovered them. But if this be true, I know of no authority which has gone so far as to impose upon him more than reasonable diligence. He is liable, if at all, not upon any theory that the structure was a nuisance in its creation, for this as we have seen it was not, but because in accepting a tenant he impliedly assumed the obligation to use ordinary care in the discovery and correction of dangerous defects in that part of the building over which he retained control. Even in a public building it has been held that liability does not attach unless the dangerous condition is known, or with the exercise of due care, ought to have been known. (*Junkermann* v. *Tilyou Realty Co., supra.* See, also, *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514.) *A fortiori* is that true where the structure is a private dwelling. Of course if negligence be shown, the action may take the form of one for nuisance or for negligence, but whatever the form of pleading, the basis of liability is the same. (*Junkermann* v. *Tilyou Realty Co., supra.*)

Negligence, therefore, is in reality the gist of this action, and negligence implies notice. But the parties covenanted in the lease that for mere negligence in suffering leaks, either in the roof or skylights, defendant should not be liable unless he had written notice of the defect. This he did not have. It is true this court has held that a clause similar to this does not apply where the landlord, by his active negligence, or affirmative wrong, has created the defect. (*Pratt, Hurst & Co.* v. *Tailer*, 186 N. Y.

417.) I am of the opinion it does apply, however, where the negligence charged is purely passive in its nature and is found upon omission to correct leaks of which the landlord is said to have been orally informed. It is no answer to say if he were so informed he was not prejudiced by the lack of written notice. The argument begs the question. The requirement of written notice was intended as a safeguard against perjury or mistake. The covenant was that unless there were a written notice there should be no liability in damages. No oral agreement superseding that covenant is established in this record or indeed is it even suggested.

It follows that the evidence failed to establish any liability on the part of the defendant and the judgment should, therefore, be reversed and new trial granted, with costs to abide event.

HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO, CRANE and ELKUS, JJ., concur.

Judgment reversed, etc.