E. CANDIA & Co., INC., Respondent, *v.* THOMAS RUBIN, Appellant.

First Department, May 16, 1924.

Landlord and tenant — action against landlord for damages caused by overflow of water from roof tank — overflow was caused by defective pump in control of landlord — lease required landlord to make repairs to roof upon written notice by tenant — water tank not part of roof and written notice not required to fix landlord's obligation — trial — verdict for approximately amount of one of two items of damage not compromise.

A tenant is not required to serve written notice on its landlord to repair a water tank and equipment on the roof of the building under the provisions of a lease requiring the landlord to keep the roof in repair, but relieving him from liability for damage unless he neglects to repair the roof after a written notice is delivered by the tenant, since the roof of the building does not include the water tank on the top thereof; and, therefore, the tenant may recover his damages caused by the overflow of the water which condition was due to a defect in the pump in the control of the landlord, although written notice was not served on the landlord, where it appears that the landlord had actual notice of the defective condition of· the pump.

Furthermore, written notice was not required because the damage was due to the affirmative act of the landlord in pumping water into the tank after knowledge of the defect.

A compromise verdict was not rendered by the jury in this case, though it was not for the full amount of the damages claimed by the tenant, since it appears that there were two claims for damages; one for damage to goods belonging to the tenant and one for damage to goods belonging to other persons, and the amount of the verdict was approximately the amount of damages claimed by the tenant for injury to its own goods; the jury apparently disallowed the claim for damage to the goods of other persons.

APPEAL by the defendant, Thomas Rubin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of May, 1923, upon the verdict of a jury.

*Archibald Palmer* [*David B. Tolins* of counsel], for the appellant.

*Otterbourg, Steindler & Houston* [*Charles A. Houston* of counsel], for the respondent.

McAVOY, J.:

The action is brought by the plaintiff, tenant, against the landlord, because of the alleged negligence of the landlord. The negligence alleged is that the landlord omitted to repair a certain pumping system which pumped water into a tank on the roof, and that, while this disrepair continued, the defendant operated this pump so as to cause the tank to overflow.

The defendant was the lessee of the entire building, 14 West Thirty-first street, and sublet different lofts to different tenants. The water was supplied to this tank by means of a pump in the basement, and that pump was under the control of the defendant. The plaintiff occupied the top floor of the building.

Plaintiff's proof shows that on September 12, 1920, the tank overflowed and caused some damage, which is not the subject of this action. The following day, September thirteenth, Mr. Candia, the president of the plaintiff, told the defendant that the tank had leaked and spoiled some goods, and then Mr. Rubin, accompanied by his electrician and by Mr. Candia, went up on the roof and inspected the tank. At that time the tank was still leaking. It was " all full with water way up to the top, all wet and still dripping, and the water was all around it." Mr. Rubin asked the electrician what the matter was, and the electrician explained that the switch did not work and " Of course that the thing overflowed." Mr. Rubin said: "All right, we will fix it right away."

Nothing was done, however, to repair the tank, as Mr. Rubin concedes. One week later, on September nineteenth, there was a recurrence of the overflow. Mr. Rubin was shown the damaged goods and said: "All right, I will fix it. Whatever is damaged, fix it and send me the bill. Try to save what you can."

This testimony was corroborated by other witnesses, and the overflow of Sunday, the nineteenth, was admitted, although it was not ascribed to the pump by defendant, but to orange peels said to have been thrown on the roof by employees, stopping up the overflow pipe from the tank.

It is the defendant's point that the lease requires written notice to the landlord of the defect in the pump. The landlord relies on clause " fourth " of the lease, which reads:

" Repairs:

" *Fourth:* The lessee agree at his own cost and expense to make all repairs necessary to preserve the said demised premises in good order and condition. The said lessor agree to make all repairs necessitated by fire, all repairs to the roof and exterior of said building but it is understood that the said lessor shall not be liable to the said lessee for any damage caused by the leakage of the roof, vault lights or skylights, unless the lessor neglect to repair same within a reasonable time after a written notice of such leakage is delivered to the said lessor."

Under this clause the lessee agrees to make certain repairs and the lessor agrees to make others. In connection with repairs to the roof, the parties stipulated that the lessor should not be liable for any damage caused by leakage of the roof, vault lights or skylights, unless the lessor neglect to repair the same after written notice of such leakage.

The question is whether, under this language, the water tank on the roof and the pumping system connected with it would be included under the word " roof," so that written notice of a defect in the water tank or in the pumping system thereof would be required in order to charge the landlord. The landlord contends that the " roof " in this clause means not only what is usually denominated as a roof, but also all the appurtenances thereof. The tenant's claim is that the word " roof " must be narrowly interpreted, and that the parties intended nothing but the upper covering of the building and not such machinery erected thereon as the water tank and pumping system.

To determine the exact meaning of the word " roof " in this context, there are well-known rules on construction which militate against the landlord's position and require the interpretation contended for by the tenant.

In the first place, this clause is one which seeks to limit the liability of the landlord in certain instances. At common law the landlord would be responsible if he had actual or constructive notice of the defect and failed to repair the same, no matter in what form the notice were conveyed to him. To escape the full effect of that legal liability, the landlord has inserted this clause,

First Department, May, 1924.            [Vol. 209

and like all such covenants, it must not be broadened by implication beyond its narrow confines: "As the condition is a limitation of liability, it cannot be extended by interpretation so as to include a case not clearly within the words." (*Griffey* v. *N. Y. Central Ins. Co.*, 100 N. Y. 417, 421.)

We think that the limitation ought not to be extended to cover a breakdown in this machinery which caused an overflow beyond the capacity of the roof and leaked through the walls by overflowing flashings and pipes designed to carry away a normal flow, since such leak was not due to failure to make common repairs to the structure of the roof, which was what was contemplated by the parties in their lease.

Besides, written notice was not required in this case, because the damage was due to the affirmative act of the landlord in pumping water into the tank after knowledge of the defect.

There are rulings in the courts that the clause in question does not apply where the landlord, by his active negligence or affirmative wrong, has created the defect. (*Pratt, Hurst & Co.* v. *Tailer*, 186 N. Y. 417.)

The clause is destructive of a claim where the neglect is merely passive.

"It does apply, however, where the negligence charged is purely passive in its nature and is found upon omission to correct leaks of which the landlord is said to have been orally informed." (*Hirsch* v. *Radt*, 228 N. Y. 100, 106.)

The court said in the *Pratt* case: "The real question presented by the appeal is whether the facts stated in the complaint are sufficient to take the case out of that provision of the lease which declares that the landlords shall not be liable to the tenant for any damage caused by the leakage of the roof unless they neglect to make the necessary repairs within a reasonable time after receiving a written notice of such leakage. The contention of the plaintiff is that this provision has reference only to such leakage as might occur in consequence of the action of the elements and the usual wear and tear to which the roof would be subjected in its ordinary use and that it has no application to a case in which the roof has been injured and rendered leaky by the affirmative act of the landlords themselves or any one acting negligently with their sanction in occupying or using the roof. Of course, it is perfectly plain that the landlords would not be relieved of liability for leakage occasioned by their own action or that of their agents in actually making holes in the roof. It could not have been intended that they were to receive written notice in order to charge them with responsibility for their own personal misconduct or

that of others which they authorized or sanctioned. It seems to me equally plain that they are not protected by this provision in the lease under such circumstances as are set out in this complaint where it appears that they permitted an occupation of the roof by another corporation for purposes which were likely to render it leaky and where they well knew that the roof was not suitable or adapted for the uses to which the corporation proposed to put it and that such use would greatly injure and damage the roof and cause it to wear out."

The proof here on plaintiff's part comes within this principle. The plaintiff's damages were fully proven and no error in the verdict of the jury on that score can be asserted.

The facts with regard to the proof of the damage are:

The witness, Edouard Candia, was first qualified as an expert with regard to embroideries, ribbons, etc., having had fifteen years' experience in that business. He knew the market value of embroidery, both as labor and as material, at this time. He also was familiar with the effect of water on machine embroidery, and he describes that in detail.

He first testified in general that the bill of particulars contained an enumeration of the damage caused and the work that had to be done, and that the amount set forth in the bill of particulars was the fair and reasonable value of the goods which were damaged, and also the correct values for that kind of work.

Counsel for the plaintiff then proceeded to take up the damage, item by item, commencing with the first item on the bill, as follows: " Q. You name six yards of trimming known as gold galloon."

At this point he was interrupted by counsel for the defendant, who said: " I will concede he will testify to every item there and you can offer it in evidence."

The jury found a verdict for $1,475. This verdict is assailed as being a compromise, having no basis in fact to support it.

Examination of the bill of particulars discloses that the plaintiff claims damage to two classes of merchandise: one, goods belonging to itself; and second, goods belonging to others. The goods which belonged to the plaintiff are enumerated in a section of the bill of particulars and total $1,776.90. Included therein, however, were some items which did not belong to the plaintiff. These amounted to $89.40. They were goods which, while in the plaintiff's possession, were the property of others. The plaintiff's own goods amounted to about the sum of the verdict. The jury apparently disallowed the claim for damage to the goods of others. It is doubtful whether the plaintiff could have recovered for that damage, because he was merely a bailee and was not responsible to his

bailors for damages which occurred without any negligence on his part. In this view the verdict may not be termed a mere compromise as to damages.

The judgment should be affirmed, with costs.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Judgment affirmed, with costs.