JOHNSON, Plaintiff and Respondent, vs. PRANGE-GEUSSEN-HAINER COMPANY, Defendant and Respondent: H. C. PRANGE REAL ESTATE COMPANY, Defendant and Appellant.

*February 11—May 5, 1942.*

366

For the appellant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* of counsel, all of Milwaukee, and oral argument by *Charles B. Quarles.*

For the respondent Dorothy Johnson there was a brief by *Bassuener, Humke & Poole* of Sheboygan, and oral argument by *John M. Poole.*

For the respondent Prange-Geussenhainer Company there were briefs by *Buchen, Federer & Grote,* and oral argu-

ment by *Jacob F. Federer* and *Clarence F. Whiffen,* all of Sheboygan.

The following opinion was filed March 10, 1942:

FAIRCHILD, J.    There was raised an issue of fact as to the cause of the icy condition of the sidewalk and an issue of law as to the responsibility between the two defendants.   Of course it is elementary that plaintiff's right to recover must rest upon some wrongful or negligent act by either or both of the defendants and that had the ice been merely a natural formation no legal liability would have accrued.   *Griswold v. Camp* (1912), 149 Wis. 399, 401, 135 N. W. 754; *Adlington v. Viróqua* (1914), 155 Wis. 472, 475–478, 144 N. W. 1130; note (1914), 51 L. R. A. (N. S.) 309.

Appellant H. C. Prange Real Estate Company contends that the evidence does not support the findings of the jury that the ice on the walk was caused by the defective drainpipe and argues that such finding is contrary to unquestionable physical facts.   It relies upon evidence showing the elevation of the alley and sidewalk in the area of the downspout and the place of injury.   This evidence was to the effect that the elevation of the alley and walk was such that water running from the drainpipe would normally flow to the center of the alley and thence onto the street and would not overflow the walk to the east of the center of the alley where the accident occurred. These measurements, however, were taken in October following the accident but no evidence was introduced as to the condition of the alley and walk at the time of the injury other than the evidence that the spout had been in a defective condition for a period of at least several weeks, that water draining therefrom flowed out over the sidewalk, and the testimony of eyewitnesses that on the day of the accident water from the pipe had flowed onto the walk east of the center of the alley and that ice extended from the place where plaintiff fell to the drainpipe.   This evidence is more than sufficient to support the verdict of the jury.

The issue as to liability between the lessor and lessee in this case presents new and serious questions. The rights and liabilities of the landlord and tenant rest in part upon their relation to each other and to the property under the terms of the lease. This is not the case where a part only of a building is in the lessee. The lessee here has possession of the entire building and no control was reserved to the lessor except the implied right of entry for the purpose of repair. The pertinent provisions of the lease read as follows:

"3—It is further agreed and understood that the lessee will at its own cost and expense, during the said term keep and maintain the . . . internal parts of said premises in good substantial repair and condition, while the lessor agrees that it will during said term at its own cost keep the outside, outer-walls and roof of said building in proper and substantial condition and repair.

"4—It is furthermore agreed and understood that the said lessee is to have the right to the use of the private alley running from Wisconsin avenue, north, and being to the rear of the premises herein leased, together with the owners and tenants of the other premises adjoining said alley.

"5—It is further understood that the lessor shall not be liable for any injury, loss or damage to person or property on or on account of the said premises, or for any other claim in any event and under any circumstances whatsoever, whether it be for labor, outlays or otherwise. . . .

"9—It is agreed and understood further, that the lessee shall at all times keep . . . the said walks on the south and east of said premises clear from snow and ice, so as to be safe for public travel thereon."

Ordinarily by leasing his property a landowner absolves himself of his duty to maintain the premises so as not to create an unreasonable risk to strangers to the premises. The duty then devolves upon the tenant by reason of his occupancy and control of the premises. See *Fellows v. Gilhuber* (1892), 82 Wis. 639, 642, 52 N. W. 307; *Kinney v. Luebkeman* (1934), 214 Wis. 1, 6, 252 N. W. 282; 1 Tiffany, Landlord

and Tenant (1910), p. 674 *et seq.,* § 101. Where, however, the landlord agrees to repair and retains control over the premises, in whole or in part, for that purpose, to that extent his duty to strangers to the premises continues. The rule that retention of control incident to an agreement to repair carries with it the corresponding duty to maintain the premises in a reasonably safe condition for passers-by is apparently the trend of modern decisions, note (1934), 89 A. L. R. 480; Bohlen, Studies in the Law of Torts (1926), pp. 209, 210; and the view adopted by the American Law Institute, expressed in the Restatement of Torts in the following language:

"A lessor of land who, as such, contracts with his lessee to keep the premises in repair, is subject to liability for bodily harm to others outside the land caused by a condition of disrepair which involves an unreasonable risk to them and which the lessor's performance of his contract would have made reasonably safe." Restatement, 2 Torts, p. 1011, § 378.

This rule has been questioned as devoid of any satisfactory basis, one objection being made that "it is doubtful whether one can properly be regarded as in control of premises for the purpose of imposing on him a duty as to third persons, merely because he has agreed to repair such premises." 1 Tiffany, Landlord and Tenant, p. 702, § 107; see also 1 Tiffany, Real Property (3d. ed. by Basil Jones, 1939), p. 168, § 108. But the soundness of this doctrine was recognized in this state in the case of *Flood v. Pabst Brewing Co.* (1914) 158 Wis. 626, 149 N. W. 489, L. R. A. 1916 F, 1101, in holding a landlord liable to an invitee of the tenant for injury caused through failure to repair where the landlord had agreed with his tenant to maintain the premises in repair.

Judge CARDOZO in the New York court of appeals in 1931 (*Cullings v. Goetz* (1931), 256 N. Y. 287, 290, 176 N. E. 397), remarked that: "The subject has divided juridical opinion. Generally [he said], however, in this country as in England, a covenant to repair does not impose upon the lessor

a liability in tort at the suit of the lessee or of others lawfully on the land in the right of the lessee;" but he points out that in Wisconsin a contrary rule obtains, citing the *Flood Case, supra.* That case does not seriously disturb the so-called general view for there were present in the *Flood Case* facts of consequence in influencing control. Liability in tort, under these circumstances, is an incident to occupation or control. Here the lessor retained the privilege to enter for repairs and to that extent it did not, so far as "those outside the land" are concerned, free itself of the responsibility it owed those outsiders. In the New York court of appeals (*Appel v. Muller* (1933), 262 N. Y. 278, 282, 186 N. E. 785, 89 A. L. R. 477), Judge KELLOGG in 1933, in speaking of the difference as to liability for one injured on the premises and one injured "off the land" said: "The effect of a covenant by the landlord to repair, in the case of a passer-by on the public street, is wholly different. In such a case there is no need that a duty be newly created by the covenant. The duty, that of using care toward a member of the public, was established when the landlord came into ownership of the property. It might have been suspended during the exclusive occupancy of the tenant, for the power of entry to make repairs would have been lost. If, however, there is a covenant to repair, the landlord's original duty to the public to maintain the structure in safe condition, and his retention of the power to perform the duty, combine to make him liable."

It has been asserted in many cases that the reservation of a right to enter to make repairs continues the duty of the landlord to the traveling public to maintain the premises in a safe condition. *Heaven v. Pender* (L. R. 1882), 9 Q. B. Div. 302, 306; *Paine v. Gamble Stores* (1938), 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407; *Ingwersen v. Rankin* (1885), 47 N. J. Law, 18, 23; *Sterger v. Van Sicklen* (1892), 132 N. Y. 499, 501, 30 N. E. 987, 16 L. R. A. 640, 28 Am. St. Rep. 594; *Burdick v. Cheadle* (1875), 26 Ohio St. 393, 396. Mr. Chief Justice WINSLOW in his concurring opinion in the

*Flood Case, supra,* succinctly summarizes the controlling principles, saying (p. 634) that the landlord "made no contract with the plaintiff and its liability is solely a tort liability." He points out that when "the owner leases the premises by ordinary lease, he commits their care and the duty to keep them reasonably safe to the tenant (as he lawfully may), and hence he is relieved of liability for defects arising during the tenancy by reason of the tenant's neglect to perform that duty." It follows then, that a landlord who reserves a privilege which bears directly upon his relation to the passer-by has not surrendered or divested himself of the duty of care.

The landlord being under a duty to the plaintiff in this case, the further questions arise as to the scope of this duty and as to the rights and obligations as between the landlord and his tenant.

The drainpipe had been broken some time previously by freight trucks backing into the alley and had then been repaired. The tenant had actual knowledge of the defect in question prior to the date of the accident; and about the first of February, when the pipe was in a broken condition, the manager of the appellant went on the roof of the building to inspect the premises, but he claimed that he made no inspection of the conductor pipe then and did not see the broken drain. The jury found that appellant had had no notice of the defective condition of the pipe, but that in the exercise of reasonable care it ought to have discovered the defect in time to repair it. Appellant, by motions after verdict, sought to have this answer changed from "Yes" to "No" on the theory that its liability under the lease, if any, must at least be predicated upon notice or actual knowledge. The primary duty here involved, however, is that of a landowner or occupier to a stranger to the premises; it is based on tort not contract. Were appellant the sole occupier of the premises in the instant case, no question could arise but that it would be liable to plaintiff under the facts and findings of the jury. *Adlington v. Viroqua, supra,* p. 477; *Davis v. Rich* (1902), 180 Mass. 235,

62 N. E. 375; *Brewer v. Farnam* (1911), 208 Mass. 448, 450, 94 N. E. 695. The facts in the instant case bring the appellant within the scope of liability to an outsider and the verdict of the jury being based upon sufficient evidence must stand.

Plaintiff has a right of recovery against both landlord and tenant for, as between her and them, each bore the duty to repair. The contention of the lessee Prange-Geussenhainer Company that no right of action exists against it cannot be sustained. Although a contrary view seems to be indicated by the language of the Maine court in *Smith v. Preston* (1908), 104 Me. 156, 160, 71 Atl. 653, and the Massachusetts court in *Cavanagh v. Block* (1906), 192 Mass. 63, 65, 66, 77 N. E. 1027, these cases are not decisive since the present question was not there in issue. This rule is implicit in the *Flood* and *Appel Cases, supra;* it has been expressly applied in England, *Wilchick v. Marks and Silverstone* (1934), 2 K. B. 56, 68, 69; and is that recognized by the American Law Institute, Restatement, 2 Torts, p. 1011, § 378, comment *a.* The tenant is liable as the general occupier of the premises, for even as to the lessor it had the right if not the duty in certain circumstances to make the repairs of the nature of those here involved. See *Hinckley v. Beckwith* (1863), 17 Wis. *413; *Pewaukee Milling Co. v. Howitt* (1893), 86 Wis. 270, 56 N. W. 784; 1 Tiffany, Landlord and Tenant, pp. 587–591, § 87-d-(7) ; 32 Am. Jur. pp. 590, 591, § 715; note (1924), 28 A. L. R. 1465 *et seq.;* note (1938), 116 A. L. R. 1234; and the landlord is liable by virtue of his control over the defective portion.

The additional contention advanced by the respondent Prange-Geussenhainer Company that the appellant alone is liable on the ground that, under the provisions of paragraph 4 of the lease the lessor retained possession of the alleyway for the use in common by its tenants is not tenable. It is not necessary to decide whether appellant retained such control and

possession of the way as to render it solely liable to passers-by for defects occurring in the alley, since the causative defect here existed in a pipe that was part of the outer wall of the building and designed to carry off water from the roof of the building occupied exclusively by the respondent company. That the provision in the lease referred to gave the lessee a sufficient right to enter to make any necessary repairs is incontrovertible from the very language of that clause.

With respect to the rights between the codefendants, the question arises as to whether the appellant is relieved from liability as against its tenant by virtue of the nonliability clause appearing in paragraph 5 of the lease so that the lessee becomes the sole ultimate bearer of the liability. A reading of the clause in question, together with the other provisions of the lease, particularly paragraph 3, under which the lessor agrees to repair the outside of the building, leads to the conclusion that the lessor and lessee agreed thereby to limit the landowner's responsibility solely to the *cost* of necessary repairs and to relieve the owner from consequential damages for failure to repair.

The indemnity provision does not affect the rights of the plaintiff against either or both of these defendants. *Hartford Acc. & Ind. Co. v. Worden-Allen Co.* (1941) 238 Wis. 124, 131, 297 N. W. 436; *Springer v. Ford* (1901), 189 Ill. 430, 59 N. E. 953, 52 L. R. A. 930, 82 Am. St. Rep. 464; *B. Shoninger Co. v. Mann* (1905), 219 Ill. 242, 76 N. E. 354, 3 L. R. A. (N. S.) 1097; *Griffen v. Manice* (1901), 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; note (1933), 84 A. L. R. 657. The issue now is simply as to who is to bear the loss. That such a provision is valid in so far as the immediate parties are concerned and not void as against public policy seems to be settled. *Hartford Acc. & Ind. Co. v. Worden-Allen Co., supra; Northern Pac. R. Co. v. Thornton Bros. Co.* (1939) 206 Minn. 193, 288 N. W. 226; *Kirshenbaum v. General Outdoor Adv. Co.* (1932) 258 N. Y.

489, 180 N. E. 245, 84 A. L. R. 645 ; note (1933), 84 A. L. R. 654 ; 32 Am. Jur. p. 615, § 739.

The trial court was of opinion that the provision was "meaningless" and "superfluous" and entered judgment solely against the appellant lessor. In support of this result the respondent lessee argues that, (1) such covenants are to be strictly construed; (2) do not apply to the portion of the premises over which the lessor retains control; and (3) do not exempt the lessor from liability for his own negligence. As to the first proposition, its application in the present case does not affect the interpretation here given the clause, for the rule of strict construction cannot be used as an instrument for defeating the clear intention of the parties. *Depner v. United States Nat. Bank* (1930), 202 Wis. 405, 410, 232 N. W. 851.

The second proposition, namely, that the covenant was not intended to apply to portions of the building over which the lessor retained control, cannot apply here because it is apparent that the amount of control retained by the appellant is not sufficient to invoke this doctrine. The cases applying the rule are those in which a portion of the premises is excepted from the property leased (*e. g., Inglehardt v. Mueller* (1914), 156 Wis. 609, 146 N. W. 808 (lease expressly provided that hallway where defect existed was "not leased") ; *Baldwin v. McEldowney* (1936), 324 Pa. 399, 188 Atl. 154 (defect occurred in hallway used by tenants in apartments in two adjoining buildings owned by lessor) ; *Botwin v. Rothkopf Realty Co., Inc.* (1926) 128 Misc. 15, 217 N. Y. Supp. 192 (landlord not relieved of liability where defect occurred in portion of building remaining under his control and used by several tenants in common) ; *Railton v. Taylor* (1897), 20 R. I. 297, 38 Atl. 980, 39 L. R. A. 246 (lessee occupied only portion of the building and defect occurred in heating apparatus located in part of building retained by lessor and under his control and management) ; *Simmons v. Pagones* (1938) ;

66 S. D. 296, 282 N. W. 257 (lessee occupied only ground floor of building and damage caused by defective water meter located on second floor) ; *Le Vette v. Hardman Estate* (1914), 77 Wash. 320, 137 Pac. 454, L. R. A. 1917 B, 222 (defect occurred in portion of building vacated by another tenant) ), and do not relate to a situation where the entire premises are leased and the landlord merely reserves the right of entry for the purpose of repairing.

Cases holding that an indemnity provision between lessor and lessee does not cover acts of negligence by the lessor deal with affirmative acts, *e. g.,* negligence in making repairs, *Spangler v. Hobson* (1924), 212 Ala. 105, 101 So. 828; *Cairnes v. Hillman Drug Co.* (1926) 214 Ala. 545, 108 So. 362; *Randolph v. Feist* (1898), 23 Misc. 650, 52 N. Y. Supp. 109; or some affirmative misconduct, *Pratt H. & Co. v. Tailer* (1906), 186 N. Y. 417, 79 N. E. 328 (lessor permitted third party to use roof for purpose for which it was not adapted causing leaks) ; *Simmons v. Pagones, supra* (lessor failed to heat building properly permitting defective water meter to freeze so that its bottom fell out) ; neither of which situations appears here. Failure to repair after oral notice, under a lease requiring written notice, has been held covered by a non-liability clause. *Hirsch v. Radt* (1920), 228 N. Y. 100, 126 N. E. 653. Clearly, mere failure to make a careful inspection of the premises cannot be held such negligence on the part of the lessor as to suspend the operation of the indemnity provision.

By reason of the application of the indemnity clause, it is unnecessary for the court to determine the further questions as to the effect of want of notice by the lessee upon the rights and liabilities between the lessor and lessee or the effect of the covenant by the lessee to remove ice and snow. See *Bixby v. Thurber* (1922), 80 N. H. 411, 118 Atl. 99, 29 A. L. R. 175, and collation of cases in 29 A. L. R. 187, 188, relating to the problem of the operation of such a covenant as an indemnity

clause against injuries sustained by strangers through formations of snow and ice caused by the negligence of the lessor.

We find no prejudicial errors in the trial other than those above treated.

*By the Court.*—Judgment reversed on plaintiff's motion to review and on H. C. Prange Real Estate Company's appeal as to Prange-Geussenhainer Company, and cause remanded with directions to grant judgment in favor of plaintiff against both defendants and a judgment over against Prange-Geussenhainer Company in favor of H. C. Prange Real Estate Company in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on May 5, 1942.