BEWLEY, Respondent, vs. KIPP and another, Appellants. [Two cases.]

*September 18—November 11, 1930.*

The cause was submitted for the appellants on the brief of *Frank S. Symmonds,* attorney, and *Robert V. Baker* of counsel, both of Kenosha, and for the respondents on that of *Stephenson, Fisher & Richardson* of Kenosha.

ROSENBERRY, C. J.   We shall state only such facts as are material to the consideration of the controlling question in this case.

The defendants are the owners of an apartment building designed for four apartments.   The building was so constructed that no part thereof was used in common.   While the four apartments were under one roof they were, so far as their use was concerned, as separate and distinct as would be four separate buildings.   The plaintiff was injured while upon the premises which she and her husband occupied as tenants of the defendants.   Liability is predicated upon the so-called safe-place statute.

Sec. 101.06, Stats., provides:

". . . Every owner of a . . . public building now or hereafter constructed shall so construct, repair or maintain such . . . public building, and every architect shall so prepare the plans for the construction of such . . . public building, as to render the same safe."

Sec. 101.07 (1): ". . . No . . . owner or other person shall hereafter construct or occupy or maintain any . . .

public building that is not safe, nor prepare plans which shall fail to provide for making the same safe."

Sec. 101.01 (12) is as follows:

"The term 'public building' as used in sections 101.01 to 101.29 shall mean and include any structure used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants."

The question presented upon this appeal is whether or not the building within which the leased premises are situated was a public building within the meaning of the statute. If the language of the statute be applied literally the defendants' building falls within the definition. We need not review or restate the rules applicable to the construction of statutes. Ordinarily plain and unambiguous language is to be given its ordinary and established meaning, but to this rule there are many exceptions.

In *Price v. State,* 168 Wis. 603, 171 N. W. 77, it is said:

"In the construction of statutes we should 'look to the whole and every part of the law, to the intent apparent from the whole, to the subject matter, to the effect and consequences, to the reason and spirit, and thereby ascertain the ruling idea present in the legislative mind at the time of its enactment, and then, if the manifest purpose of the lawmakers can thereby be reasonably spelled out of the words they used to express it, to give effect to such purpose, though the meaning thus adopted be quite contrary to the literal sense of the words.' *Wis. Ind. School v. Clark County,* 103 Wis. 651 (79 N. W. 422), at p. 659; *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041."

The language used in this statute is very broad. Literally interpreted it would make every part of a building public although considerable portions of it might be used privately and exclusively by a single tenant or person. In *Gobar v. Val Blatz Brewing Co.* 179 Wis. 256, 191 N. W. 509, it

was held that such was not the purpose and intent of the legislature. It was there said:

"Such part of an entire structure as is put to a public use is not withdrawn from the statute by reason of its being but a fractional part of an entirety, but, on the other hand, the rest of the structure does not become drawn within the statute by the use made of the fractional part."

To what extent if at all is a building constructed and used as the building in question was, within the purview of the statute? We discover no legislative purpose in the enactment of this statute to change in any respect the mutual obligations of lessor and lessee at common law. Under the principles of the common law the lessor was under no obligation to repair unless he assumed such obligation by the terms of the lease. Concededly this statute was not intended to, and does not, affect the relative duties of landlord and tenant in this respect in cases where there is a single tenant of a demised building. While this is not conclusive, it is a most significant indication that by this legislation the legislature was not intending to regulate or modify the common-law relation of landlord and tenant. It was the purpose of the legislature to secure the safety of buildings where the public gathered or to which persons resorted in numbers. That was the dominant purpose. To this end, and to this end only, was included within the term "public building" any structure used by three or more tenants. A structural defect in such a building might result in its fall, to the injury of many persons. It is plain that this statute does require a building occupied by three or more tenants to be structurally safe. It is also apparent that the statute requires the landlord to keep in safe repair such portions of the building as may be used in common by the various tenants, their guests, servants, and attendants, such as the common hallway, the elevator, etc. None of the tenants are under obligations to keep these in repair. Unless the legisla-

ture did intend to interfere with the common-law duties of lessees, it did not intend to relieve the lessee of keeping in repair that portion of the building specifically demised and to which he is entitled to the exclusive possession. In this respect a tenant in a public building enjoys no freedom by reason of this legislation from the duties which devolve upon tenants of other buildings. This railing was for the protection of a stairway which was specifically demised with the premises. It was a means of ingress and egress to the premises demised. The stairway was not a place where the public generally resorted, nor was it intended for the common use of the tenants, their guests and servants, in that building. Whether the landlord or the tenant was responsible for its defective condition depends upon whether the defect was structural in its nature or whether it was the result of ordinary wear and tear. The evidence in the case discloses it to have been of the latter. The building and this stairway had been in use many years and its structural safety is not challenged. It gave way because of the deterioration of the wood of which it was constructed resulting from natural causes. The repair of defects of this kind, according to the principles of the common law, belongs to the tenant and not to the landlord, and we conclude that the safe-place statute imposed upon the landlord no duty to keep this guard rail in repair. There being no claim of liability except under the safe-place statute, it is evident that the plaintiff's evidence establishes no cause of action. The complaint in each case should therefore be dismissed.

*By the Court.*—Judgment appealed from in each case is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.