HECKEL, by Guardian *ad litem,* Respondent, vs. STANDARD GATEWAY THEATER, INC., Appellant.

*September 14—October 11, 1938.*

For the appellant there was a brief by *Shannon & Higgins* of Kenosha, and oral argument by *Frank J. Shannon* and *Joseph E. Higgins*.

For the respondent there was a brief by *Taylor, Phillips & Taylor* of Kenosha, and oral argument by *David L. Phillips*.

ROSENBERRY, C. J. The principal question raised upon this appeal is whether or not there is evidence in the record which sustains the jury's finding that the defendant was guilty of failing to maintain its premises as free from danger as the nature thereof would reasonably permit. In the determination of this question we must take that view of the evidence which is most favorable to the plaintiff.

It appears that the plaintiff on April 1, 1937, attended a moving-picture performance in defendant's theater, being accompanied by her sister Lydia and by Chester Tower, her sister's escort. They left the balcony about 11 o'clock. The plaintiff and her sister went to a rest room located on the mezzanine floor as did Chester Tower. They were in the rest rooms for a period of five or ten minutes when they all met on the mezzanine floor and started to descend the stairway to the foyer. The stairway was made of terrazzo concrete and was approximately eight feet wide. It was covered with a carpet under which was a matting. The carpet extended to within eight or nine inches from the north wall and eight inches from the railing on the south side of the stairway. The carpet was eighty inches in width. About halfway down the stairway was a landing seventy-two inches long, which was also carpeted. On the north side of the stairway was a handrail which extended out five inches from the north wall. The carpet was attached at the corners

at the bottom of the risers where they joined the treads. The carpet lay flat on the terrazzo treads. The plaintiff testified that she walked down the stairs ahead of her sister and Tower and on the north side with her hand on the rail with one foot on the carpet and her right foot on the concrete. In this manner she walked down the first flight of stairs across the seventy-two-inch platform. When she put her right foot down on the next step, her heel got caught on the rug, and then she tumbled to the bottom of the steps. While the plaintiff complained of dim lights, and the jury found the lights were dim, it appears from the testimony of plaintiff herself that she at all times knew exactly where she was stepping so that the dimness of the lights could not possibly have contributed to the accident unless she failed to observe some defect in the carpet. Her sister who was three or four steps behind her, was able to see that the plaintiff had her right foot on the concrete which strongly indicates that the lights made the place visible.

The condition of the carpet was described in the testimony of one Edward Dudzinski, a draftsman and a witness for plaintiff. He examined the carpet on May 20th following the accident, and it is upon his testimony that the manner in which the carpet was attached to the stairway is based. He testified further that there were no tacks along the sides of the rug. It appears that there was a wooden strip imbedded in the steps where the tread and riser meet and the carpet was nailed to that strip. He examined the carpet and— "found I was able to lift the edge of this rug anywhere from half an inch to an inch without applying any great deal of pressure."

A number of witnesses examined the carpet at the place where the plaintiff testified she fell, shortly after the accident. The uncontradicted testimony shows that there were no tears or defects of any kind in the carpet except that the

nap was worn off in places on the tread. The evidence discloses that the carpet was inspected regularly for defects and none were found. No witness testified as to how the carpet could have been more securely fastened. It is apparent that nails could not be driven into the concrete steps. The building in every respect complied with the building code. There was no tear or defect of any kind which the plaintiff could have seen had the stairway been ever so light. She saw all that was to be seen, that is, that she was walking with one foot on the concrete and one on the carpet.

We have carefully examined the evidence both in the case and the record and we fail to find any evidence which sustains the finding that the stairway was not as free from danger as the nature of the place would reasonably permit. As to the light, there was not only testimony of the plaintiff that she saw where she was placing her foot, but her sister who was some three or four steps behind her, testifies that she saw that she was walking with one foot on the concrete. There is much convincing evidence to the effect that the plaintiff fell because in some way or other the heels on both of her shoes came off. Both these heels were found on the middle of the step and not adjacent to the north side where she says she was walking. It appears from the testimony that thousands of people had gone up and down the stairway both before and after the accident with the carpet in the same condition as it was on the night of the accident and no one had ever discovered any defect or sustained any injury. The safe-place statute (sec. 101.06) does not require the owner of the premises resorted to by the public to do the impossible or the unreasonable in maintaining its premises in a safe condition. There is no proof that the carpet was not properly laid, nor that it was in any way defective. The only thing suggested is that it should have been nailed to the concrete riser. The stairway apparently is of fireproof con-

struction, and there is no evidence in the record which indicates that a safer method of fastening the carpet could be employed nor is any suggested which is practicable.

The law applicable is fully discussed in *Erbe v. Maes* (1938), 226 Wis. 484, 277 N. W. 111. That case rules this one. The mere fact that an accident happens does not prove that the place was not safe. The injury sustained must have been caused by something other than a structural defect in the premises. The plaintiff's testimony that her heel caught the edge of the carpet and caused her to trip is incredible in view of the facts established by the uncontradicted evidence.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to dismiss the complaint.