BURLING, Appellant, vs. SCHROEDER HOTEL COMPANY, Respondent.

*April 10—June 24, 1940.*

For the appellant there were briefs by *Affeldt & Lichtsinn* and *Suel O. Arnold,* all of Milwaukee, and oral argument by *George A. Affeldt.*

For the respondent there were briefs by *Shaw, Muskat & Paulsen,* attorneys, and *Van B. Wake* of counsel, all of Milwaukee, and oral argument by *Mr. Wake.*

The following opinion was filed May 7, 1940:

FRITZ, J.   The plaintiff, H. R. Burling, appeals from a judgment dismissing his action to recover damages from the defendant, Schroeder Hotel Company, for personal injury sustained upon his falling down a stairway in the defendant's hotel.   The stairway extended northward from the floor of the lobby to a dining room seven feet above the lobby floor. Commencing at the lobby floor the stairway was nineteen feet wide and there were three risers totaling nineteen and one-half inches to a landing, the north and south width of which was eleven feet.   Above it there were three risers to the second landing, four feet wide from north to south, and there was a checkroom at the west end of this landing.   Above that there were seven risers to the dining-room floor level, and the upper portion of the stairway was sixteen feet wide excepting that at the highest riser the width was reduced to fourteen feet five inches.   The treads on the risers above the lowest landing were fine-grained, hard Tennessee marble, capable of high polish.   There was no center handrail, but there were short sections of handrails at the walls on the east and west sides of the stairway for each portion of the stairway that was of the same width.   Plaintiff, with a party of eight others, had entered the lobby to go up the stairway to the dining room as guests.   Some preceded and others followed plaintiff, who stopped at the checkroom at the west end of the second land-

ing. Then he walked diagonally upward toward the center of the stairway. When both feet were on the first tread below the dining-room floor he stopped and turned partially to his right (*i. e.*, to the south and east) to see if his party was together. As he turned and was practically half turned, facing east or a little southeast, his right foot slipped sideways and a little toward his rear and off the tread, and he commenced to fall. He tried to catch his footing and balance but was unable to do so, and stumbled down the stairway and fell to the lobby floor with the result that his right elbow was seriously fractured.

The jury found, in answer to questions submitted for a special verdict, that the absence of a center handrail rendered the stairway unsafe for persons walking up in the usual and customary manner, and such absence was an efficient cause of plaintiff's falling down the stairway; that the surface of the edges of the treads was not in such a condition as to render the stairway unsafe for persons walking up on it in the usual and customary manner; and that plaintiff was not negligent in respect to the manner in which he walked up the stairway, but was negligent "in respect to his duty to observe the position of his feet immediately prior to his fall," and such negligence contributed to his fall and was twenty per cent of the total negligence which caused his injury. On motions after verdict the court filed a written decision holding that there was ample evidence to support the jury's finding that the absence of a center handrail rendered the stairway "unsafe for persons walking up on it in the usual and customary manner," and the instructions to the jury and the written decision disclose that the court considered the safe-place statutes, secs. 101.06 and 101.01 (11), applicable to the stairway. The court concluded, however, that the absence of a center handrail was not an efficient cause of plaintiff's falling down the stairway, and therefore substituted its finding to that effect in place of

the jury's affirmative finding to the contrary. The court based its finding in this respect upon its conclusion that the "testimony leaves it entirely to speculation as to whether plaintiff was in such position that he could have seized hold of a center rail had there been one."

On this appeal plaintiff contends that the court erred in setting aside the jury's answer and substituting therefor the court's finding that the absence of a center handrail was not a cause of plaintiff's fall, and thereupon entering judgment dismissing the action. In passing upon plaintiff's contention, there is applicable the rule that,—

"If there was any credible evidence which reasonably admitted of inferences sufficient to sustain the jury's finding then what were the proper inferences to be drawn was for the jury, and its findings could not be discarded by the court, although a new trial could have been granted on that ground in the exercise of the court's discretion in the interests of justice." *Webster v. Krembs,* 230 Wis. 252, 256, 282 N. W. 564.

A review of the record discloses that there was evidence because of which the jury could believe that the plaintiff was within two feet of the center of the stairway and facing toward the center or southeast, when his right foot began to slip, and he threw out his arms and tried to grab something or balance himself as he began to fall; that therefore he was so close to the center of the stairway that if there had been a center rail it would have enabled him to prevent his fall; and that, consequently, the absence of such a rail was one of the causes of the fall. As the stairway was sixteen feet wide at the tread from which plaintiff's foot slipped, the center of the tread was eight feet from the west wall, but there was nothing to indicate the exact location of the center. That plaintiff was within but a foot or two of the center when his foot began to slip and he threw out his arms and tried to grab something or balance himself could reasonably be inferred by the jury from the following testimony.

Plaintiff testified, "I believe that I got up pretty well to the top and about the center." (Cross-examination) "*Q*. How many feet do you believe you were from the west side wall just prior to your fall? *A*. Well, I would judge about six to seven feet. *Q*. Would that leave you several feet from reaching the approximate center of that stairway? *A*. No, I was almost toward the center of the stairway. *Q*. Did it still leave a matter of several feet? *A*. No, I would say not." Lucy Kelly (who was one of his party) testified, "I walked up about the center. . . . I stood there and Mr. Burling was to my right on the stair below. . . . As I stood there I noticed that Mr. Burling was on the step below me, that he turned to the right. I next noticed his foot slipped and he fell down the stairs. He threw out his arms to try to grab something or balance himself, and he fell. . . . I selected the center of the stairway to wait for Mr. Burling because as we came in we stood right there in the center and just naturally walked up the stairway in the center." Anna Parrot (another who was in his party) testified, "While I was standing there on the second little platform . . . he [plaintiff] started from the left-hand side and up on a slant, and he got up to about the stair below the dining-room floor and it was about the center; I would not say exactly center because I would not know, but he was pretty close to the center of the stairs that led from the lobby floor into the dining room. I saw that he had both feet on the stairs and he was standing a little to the right of the stairway going up and his right foot slipped to the right. With that it threw him sideways and he threw out his arms, turned around face frontward and came running down, in a running position, with his arms out. . . . I was standing a little to the right of the center of the stairs, on this second little platform. He passed me, but he was not right up near me, nowheres near me. He was further over to the left side of the stairs. . . . When I say he passed on the left I mean on my left as I was facing the dining

room." That testimony admitted finding that Burling was sufficiently close to the center of the stairway to enable him to reach a center handrail if there had been one when he slipped and began to fall and threw out his arms to grab something or balance himself; and, consequently, it was within the jury's province to find that the absence of the rail was an efficient cause of plaintiff's falling. The absence of a handrail and failure to comply with the safe-place statute in that respect may, under such circumstances, constitute a cause of the fall. *Washburn v. Skogg,* 204 Wis. 29, 233 N. W. 764, 235 N. W. 437; *Allison v. Wm. Doerflinger Co.* 208 Wis. 206, 242 N. W. 558; *Montgomery Ward & Co. v. Snuggins* (8th Cir.), 103 Fed. (2d) 458. It follows that plaintiff is entitled to have the jury's finding as to cause reinstated.

During the course of the trial there was considerable controversy as to whether provisions requiring center handrails for stairways, which are in the industrial commission's safety order 5116 (2) of the state building code and in sec. 391 of the Milwaukee code, were applicable to the stairway in question. However, in instructing the jury in respect to the issue as to whether the absence of a handrail rendered the stairway unsafe, the court expressly confined that issue to a determination as to whether the stairway was safe or unsafe under the definition of the word "safe" in secs. 101.01 (11) and 101.06 of the safe-place statutes by the following instruction:

"In considering the first question you should not consider the safety order of the Wisconsin industrial commission, . . . nor the ordinance of the city of Milwaukee on the subject of intermediate handrails. . . . You should not try to determine or even consider whether the safety order or ordinance applies to this case, . . . you are to answer whether the stairway without a center handrail was rendered unsafe for persons walking up the stairway in the usual and customary manner, keeping in mind that the word 'safe' means such freedom from danger to the life, health, safety or wel-

fare of frequenters or the public as the nature of such public building will reasonably permit."

Consequently, as the issues were submitted under the safe-place statutes, and the provisions thereof are applicable to the stairway in question because the defendant's hotel is a "public building" under the definition of that term in sub. (12) of sec. 101.01, Stats., the facts found by the jury render the defendant liable to plaintiff for the damages which he sustained excepting in so far as the amount of his recovery is to be diminished by reason of his contributory negligence.

Plaintiff contends the court erred in not changing the jury's answer that he was negligent "in respect to his duty to observe the position of his feet immediately prior to his fall," and then substituting therefor a finding that he was not negligent in that respect. In this connection he claims there was no evidence that he failed in his duty to observe the position of his feet. The contention must be overruled. The jury's finding was in answer to a question as to which the court instructed:

". . . you will consider what position plaintiff was in just before he fell and where he placed his feet and whether he used ordinary care in watching his step, so to speak."

Thus, the scope of the question was broadened, and the jury's findings as to plaintiff's negligence and that it constituted twenty per cent of the total causal negligence were warranted by the evidence. It follows that the judgment must be reversed with directions to reinstate the jury's finding that the absence of a center handrail was an efficient cause of the plaintiff's falling down the stairway; and that thereupon judgment must be entered for plaintiff's recovery of eighty per cent of the amount assessed as damages.

*By the Court.*—Judgment reversed; and cause remanded with directions for further proceedings and the entry of judgment in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on June 24, 1940.