Sheehan and another, Appellants, vs. 535 North Water Street, Respondent.*

*November 11—December 7, 1954.*

* Motion for rehearing denied, with $25 costs, on February 8, 1955.

For the appellants there was a brief by *Brennan, Brennan & Brennan* of Milwaukee, attorneys, and *George Schlott-*

*hauer* of Madison of counsel, and oral argument by *Mr. Martin J. Brennan, Mr. Joseph K. Brennan,* and *Mr. Schlotthauer.*

For the respondent there was a brief by *Lees & Bunge* of Milwaukee, attorneys, and *M. H. Giffin* and *Morris Stern,* both of Milwaukee, of counsel, and oral argument by *Mr. Stern* and *Mr. Giffin.*

BROWN, J. It is conceded that the building in question is a public building within the meaning of ch. 101, Stats. By sec. 101.01 (11), Stats., the term "safe" or "safety" as applied to a public building means such freedom from danger to the safety or welfare of frequenters (among others) as the nature of the building will reasonably permit. Sec. 101.06 states that every owner of a public building shall so construct, repair, or maintain it as to render the same safe. We have held that an owner who has divested himself of possession and control by land contract or lease so that he has no right of entry is not within the liabilities which sec. 101.06 places on owners and parties in possession generally. *Wannmacher v. Baldauf Corp.* (1952, 1953), 262 Wis. 523, 55 N. W. (2d) 895, 57 N. W. (2d) 745; *Freimann v. Cumming* (1924), 185 Wis. 88, 200 N. W. 662. We have also held that when a lease binds an owner to make repairs his right of entry to do so is implied, and he is within the purview of sec. 101.06, *Johnson v. Prange-Geussenhainer Co.* (1942), 240 Wis. 363, 2 N. W. (2d) 723. Presently we have a condition where the owner has not agreed to alter or repair but has reserved the right to do so if it deems that to be necessary, and the question is whether or not the duty which a literal reading of sec. 101.06 would impose on all owners has attached to this defendant. Our decisions have emphasized that it is the lack of a right to enter a demised building which excuses the owner, when he is excused, from doing whatever

may be necessary to make his building safe. *Wannmacher v. Baldauf Corp., supra,* page 531.

*Freimann v. Cumming, supra,* involved the mere turning on of a light in the demised premises, but the language and reasoning of the opinion is instructive. Referring to sec. 101.06, Stats., the court said, page 91:

"Considering the language and general purpose of this statute, we now hold that in order to place such a liability as is here claimed against one as the *owner* of such premises there must exist in such person the right to present possession or present control or dominion thereover so that such person may lawfully exercise the rights necessary to permit him to properly enter upon the premises in order to perform such an ever-present duty as is fixed by this statute. A present right of possession is necessarily involved in the idea of a present duty to make repairs or changes."

*Johnson v. Prange-Geussenhainer Co., supra,* dealt with a lease which obliged the owner to make exterior repairs but the well-considered *obiter dicta* on page 371 states:

"It has been asserted in many cases that the reservation of a right to enter to make repairs continues the duty of the landlord to the traveling public to maintain the premises in a safe condition." (Citing cases, and concludes, p. 372): "It follows then, that a landlord who reserves a privilege which bears directly upon his relation to the passer-by has not surrendered or divested himself of the duty of care."

The reason for relieving the owner of the obligation fails when he retains the right to enter and repair even though he may not choose to exercise the right. If he has the right to comply with sec. 101.06, Stats., he should comply with it.

The respondent relies on a statement in the opinion in *Bewley v. Kipp* (1930), 202 Wis. 411, 233 N. W. 71, where, speaking of the safe-place statute, we said, page 414:

"Under the principles of the common law the lessor was under no obligation to repair unless he assumed such obliga-

tion by the terms of the lease. Concededly this statute was not intended to, and does not, affect the relative duties of landlord and tenant in this respect in cases where there is a single tenant of a demised building. While this is not conclusive, it is a most significant indication that by this legislation the legislature was not intending to regulate or modify the common-law relation of landlord and tenant."

We think counsel has not appreciated the facts to which the quotation was applied. The action was brought by the tenant against the landlord for injuries which the tenant sustained in the demised premises. Immediately before the extract quoted from the opinion by respondent the following sentence appears:

"We discover no legislative purpose in the enactment of this statute to change in any respect the mutual obligations of lessor and lessee at common law."

Further on, we said:

"Unless the legislature did intend to interfere with the common-law duties of lessees, it did not intend to relieve the lessee of keeping in repair that portion of the building specifically demised and to which he is entitled to the exclusive possession."

It is apparent that the court in the *Bewley Case, supra,* was discussing the impact of the statute on "the *mutual* obligations of lessor and lessee," "the relative duties of landlord and tenant," and concluded that the statute did not, as between them, shift the burden of repairing the premises demised to and exclusively possessed by the tenant. Neither the decision nor the opinion had anything to do with the effect of the statute upon the owner's obligation to third parties.

We consider that where the legal right to enter, examine, alter, and repair demised premises has been retained by the owner of a public building, that right cannot be wholly

divorced from the statutory duty which the owner owes to frequenters to maintain a safe place. As we have had frequent occasion to point out, that obligation is limited to furnishing a building free from structural defects. *Gokey v. Electric Household Utilities Corp.* (1942), 241 Wis. 385, 388, 6 N. W. (2d) 189; *Williams v. International Oil Co.* (1954), 267 Wis. 227, 64 N. W. (2d) 817. Assuming that a structural defect has caused the present injury, there is still a question as to whether the duty has arisen.

The language of sec. 101.06, Stats., is not qualified. Read literally, it places an absolute duty on employers to maintain a safe place of employment. This is a broader duty than it places upon the owners of public buildings. *Williams v. International Oil Co., supra.* Nevertheless, we held in *Pettric v. Gridley Dairy Co.* (1930), 202 Wis. 289, 293, 232 N. W. 595, in order to accord with the principles of natural justice and the presumed intent of the legislature, "the duty of the employer to repair or maintain his place of employment does not arise until he has either actual or constructive notice of the defect." Then, citing the *Pettric Case, supra,* and others, we said in *Kaczmarski v. F. Rosenberg Elevator Co.* (1934), 216 Wis. 553, 559, 257 N. W. 598, "The same rule in reason applies to owners."

For the same reasons we consider that the same rule in reason, requiring notice, must apply to an owner who, though retaining the right to enter, examine, repair, etc., has delivered to a tenant premises which are structurally safe in a public building and which thereafter are rendered structurally unsafe by the tenant without the owner's knowledge. Until he has actual or constructive notice of what his tenant has done, the owner's duty under sec. 101.06, Stats., to maintain a structurally safe building does not arise in respect to structural defects which the tenant has produced. Nor is the landlord or owner required to patrol the demised premises

in order to discover what his tenant may be doing in them when the lease does not require him to maintain and repair the premises, in the absence of reasonable cause to believe that an unsafe condition has been or is being created there. Hence, lapse of time, alone, during which the condition might have been discovered if the owner had entered the premises, is insufficient to constitute constructive notice.

The jury found that the defendant, through its officers, agents, or employees had actual notice of the unsafe condition due to the combination latch in time to have remedied such unsafe condition. The only person to whom such notice might have come was Mr. Eder, defendant's president. No one testified that he ever saw the latch while it was installed or knew of its existence, or that he came to the part of the building occupied by Matthew at any time while the latch was in place. He had nothing to do with either its placing or its removal. He did not hear of the accident till six months after it had occurred. We consider that the trial court, on the motions after verdict, correctly determined that there was no evidence by which the finding of actual notice could be supported.

The jury did not answer the question concerning constructive notice but, applying the principles which we have discussed, we find no evidence in this record which could support a finding that the owner had constructive notice if such a finding had been made. The nature of the installations made by the tenant, as authorized by the lease, is not disclosed, but there is not the slightest evidence concerning them or concerning the occupancy in general which would lead a reasonable person to believe, or even suspect, that the premises were thereby being rendered structurally unsafe, and thus require the owner to investigate or remain passive at his peril.

Our discussion has proceeded upon the assumption that the latch constituted a structural defect. That was the appel-

lants' claim but we have serious doubts that it is a valid one. The learned trial court determined that it was not, as a matter of law. Under the circumstances here, and in our view of the law, it does not make any difference. If there was a structural defect, it was one due to a change made by the tenant of which the owner had neither actual nor constructive notice. If it was not a matter of structure but was some other sort of defect, such as one of maintenance and repair, the citations already given also free the owner from liability unless he has timely notice of the unsafe condition.

Counsel for appellants submit that the floor of Matthew's premises near the elevator was warped, preventing the door from being completely opened and that the elevator jarred the latch, causing it to fall upon appellant. There were no questions in the verdict bearing upon these contentions and the record would not support answers placing liability on the owner if there were. The entire inquiry was directed to the matter of the latch, and in our view the record does not support the finding that the owner had timely knowledge of the unsafe condition. Without such a finding supported by evidence the verdict cannot stand.

Appellants point out that the lease gave to Matthew the use, in common with the other tenants, of the elevator, stairway, and loading facilities, and they submit that as to such premises the owner retains possession, control, and responsibility. This accident did not happen in any of the parts of the building reserved for common use but occurred inside the fifth-floor premises demised exclusively to Matthew. The legal principle to which appellants refer us is not applicable.

*By the Court.*—Judgment affirmed.

STEINLE, J., took no part.